(87 South. 688)

### SIMS v. ALABAMA WATER CO.
(7 Div. 93.)

(Supreme Court of Alabama. Dec. 23, 1920. Rehearing Denied Feb. 19, 1921.)

1. Waters and water courses ⊚⊸203(13)—Water company held not liable for cutting off supply of consumer, who refused to pay for water furnished.

Where water supply company's contract with city gave it the right to discontinue the supply of water to any person upon the failure of such person to pay for water used, and where consumer with whom the company had a contract to furnish water refused to pay for water furnished unless the company stipulated that one-half of the payment was for account of another tenant of the building occupied by consumer with whom the company had no contract, but who used water from same tap as consumer, the company did not become liable to consumer by cutting off her water supply.

2. Waters and water courses ⊚⊸203(13)—Water supply may be shut off for nonpayment of rates.

Generally private or municipal corporations furnishing the public with water may adopt and enforce a rule that water will be shut off for nonpayment, and may prescribe a reasonable minimum advance payment which also may be enforced likewise.

3. Waters and water courses ⊚⊸203(13)—Remedies open to consumer, pending settlement of bona fide dispute as to amount due, for water.

Where there is a bona fide dispute between water supply company and a consumer as to the amount due for water supplied or to be supplied under reasonable regulation requiring payment in advance, the consumer, in order to save his supply of water pending settlement of

the dispute, is required to pay the amount demanded, and sue for its recovery if unjust in law and fact, or to invoke the equity jurisdiction of the court to enjoin the company from cutting off the water supply pending a judicial determination of the matter in issue, offering to pay the sum the court may ascertain to be due.

**4. Waters and water courses ⬤⟹203(13)—Water company shutting off supply liable for damages if in the wrong as to a dispute.**

Water supply company which discontinues service in case of dispute as to amount due by consumer, if in the wrong, is liable to compensatory damages, and, when circumstances justify it, to punitive damages.

**5. Waters and water courses ⬤⟹203(13)—Ordinance forbidding cutting off water supply without notice held valid.**

An ordinance, forbidding any water company to cut or shut off any consumer's water supply, even though he is in arrears with his water rent, without first giving him at least 10 days' notice of such intention, *held* valid.

Per Anderson, C. J., and McClellan, Gardner, Thomas, and Brown, JJ.

**6. Appeal and error ⬤⟹500(2)—Sufficiency of count as against demurrers not reviewable, where judgment entry does not disclose ruling.**

Sufficiency of count as against demurrers is not reviewable, where the judgment entry discloses no specific ruling upon demurrers to the count.

Thomas, J., dissenting.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Action by C. M. Sims against the Alabama Water Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The ordinance referred to appears as a part of count 6, as follows:

"Sec. 1094. Water Service: When Unlawful to Cut Off. It shall be unlawful for any officer, agent or employee of any water company to cut or shut off any consumer's supply of water, even though he is in arrears with his water rent, without first giving him at least ten days' notice of such intention."

Chas. F. Douglas, of Anniston, for appellant.

Under the circumstances the company could not cut off the water until it had judicially ascertained the correct amount due. 16 Ala. App. 333, 77 South. 927; 2 Ala. App. 639, 56 South. 838; 89 Miss. 252, 42 South. 349, 119 Am. St. Rep. 702; 131 Md. 91, 101 Atl. 771, L. R. A. 1918A, 764; 81 S. C. 438, 62 S. E. 874, 128 Am. St. Rep. 923; 82 Ohio St. 216, 92 N. E. 233, 31 L. R. A. (N. S.) 301, 19 Ann. Cas. 848; 201 Ala. 141, 77 South. 569. Certainly the water could not be cut off without the required notice. 175 Ala. 102, 57 South. 471; 14 Ala. App. 332, 70 South. 209; 166 Ala. 612, 52 South. 347; 146 Ala. 330, 39 South. 756; 185 Ala. 388, 64 South. 23, Ann. Cas. 1916B, 166; 149 Ala. 457, 42 South. 824, 9 L. R. A. (N. S.) 338. The company had no right to exact two minimums. 146 Ala. 600, 41 South. 10.

Knox, Acker, Dixon & Sterne, of Anniston, for appellee.

The assignments of error are not sufficient to raise the propositions argued. 169 Ala. 548, 53 South. 803; 160 Ala. 635, 49 South. 343; 138 Ala. 673. Plaintiff must allege performance on his part of conditions entitling him to service before he could have damages for failure to get service. 201 Ala. 141, 77 South. 565; 198 Ala. 535, 73 South. 905; 10 Ala. App. 273, 64 South. 510. Two consumers cannot demand service over one pipe for the price of one consumer. (Ala.) 42 South. 10; 16 Ala. App. 209, 76 South. 515. City councils cannot by ordinance or resolution create or regulate civil causes of action. 89 Pa. 71, 33 Am. Rep. 726; 11 R. I. 456, 23 Am. Rep. 502.

SAYRE, J. Appellant brought this action for damages against appellee, alleging that, having for some time been a customer of the appellee, a water company operating in the city of Anniston under a contract with said city in accordance with which it was supplying water to the people thereof, appellee had wrongfully cut off her water supply. Some of the counts alleged that appellee had acted wrongfully, wantonly, and willfully in the premises.

[1] The evidence showed without dispute that appellant and another occupied the building to which the water was furnished; that a hallway separated the parts occupied by their two families; that both families used water from one tap on the back porch; that the other family had never applied to appellee for water or a connection with its main; that appellee furnished its water to appellant, and had no contractual relations whatever with the other family; that, assuming appellant's liability for the water used by the other tenant, she was in arrear for two minimum charges for the then last quarter and a like sum required by appellee as a payment in advance for the current quarter; that appellant offered to pay the sums due, expressly stipulating that one-half the payment was for her own account, one-half for account of the other tenant; that appellee offered to take the whole amount for account of appellant, but refused to take any part of it for account of the other tenant; that appellee refused to pay in that way, whereupon, after the lapse of some time, appellee cut off the water. Appellee defended under its contract with the city of Anniston whereby it had stipulated that it should have—

"the right to discontinue the supply of water to any person or corporation upon the failure of such person or corporation to pay for the

water used or consumed by him or it, or upon the failure of such person to keep a deposit of two dollars with the party of the first part [appellee] to secure the payment of the water rental, and that the word 'consumer' in its contract should be construed to mean 'each separate family, business, firm, corporation or individual, using water for domestic or commercial purposes, and shall not include manufacturers and railroads.' "

This defense was established without dispute, and it was legally sufficient.

[2] The general rule is that private or municipal corporations furnishing the public with water may adopt and enforce a rule that water will be shut off for nonpayment, and may prescribe a reasonable minimum advance payment which also may be enforced likewise. Mansfield v. Humphreys Mfg. Co., 82 Ohio St. 216, 92 N. E. 233, 31 L. R. A. (N. S.) 301, 19 Ann. Cas. 842, note, page 847, where many cases are cited, including Hieronymus v. Bienville Waterworks Co., 131 Ala. 447, 31 South. 31.

In Birmingham Waterworks Co. v. Brooks, 16 Ala. App. 209, 76 South. 515, it was decided that, if the water company, in supplying one of several consumers through a common service pipe, would be compelled to supply the others without compensation, it has a legal right to refuse to supply the one through such pipe, on the ground that he had not provided, as it was his duty to do, a separate service pipe through which he could be supplied without loss. This court denied a writ of certiorari seeking to review and revise the judgment of the Court of Appeals (Ex parte Brooks, 200 Ala. 697, 76 South. 995), and our judgment now is that the case was properly decided. Cox v. Cynthiana, 123 Ky. 363, 96 S. W. 456. As observed by Thompson, J., in McDaniel v. Springfield Waterworks Co., 48 Mo. App. 273:

"The slightest reflection will show that a water company could not do business if its only remedy for the waste of its water by its consumers consisted in actions at law against them severally."

It results, in principle, that appellee here was within its legal right in demanding of appellant past-due and minimum advance charges for both families.

Nor was appellee bound to accept payment for the other tenant from appellant, since, by the conditions of her tender, appellant sought to coerce from appellee an acknowledgment of the right of such other, who, as we have heretofore pointed out, had no contractual relations with appellee, to receive water through a common service pipe. The other tenant was a stranger to the contract between appellant and appellee, appellant's tender for such other was the act of a volunteer, not binding upon appellee. 38 Cyc. 155; 16 Ala. App. supra.

[3, 4] Appellant cites cases which hold that neither a water company nor a municipality can arbitrarily cut off a consumer's water supply—to quote the further language of the note to Mansfield v. Humphreys Mfg. Co., supra, from which appellant's cases are taken—"merely because he refuses to pay a claim for water rent, where the consumer's liability, or the accuracy of the amount claimed, is a matter of just dispute between the parties." This statement of the law is sound of course, so far as it goes; but we doubt that it fully covers the question at issue, for the weight of authority seems to hold that, in case of a bona fide dispute as to the amount demandable for water supplied or to be supplied under reasonable regulation requiring payment in advance, the consumer's recourse, if put to it in order to save his supply of water pending a settlement of the dispute, is to pay the amount demanded and sue for its recovery if unjust in law and fact, or to invoke the equity jurisdiction of the court to the end that the water company may be enjoined pending a judicial determination of the matter in dispute, offering to pay the sum the court may ascertain to be due. Note to Mansfield v. Humphreys Mfg. Co., supra. This does not militate at all against the proposition, sound also, that where the company discontinues its service in any case of dispute it does so at its peril, and, if in the wrong, is liable to compensatory damages in any event, and, when the circumstances justify it, to punitive damages also, as stated by the Court of Appeals in Birmingham Waterworks Co. v. Keiley, 2 Ala. App. 639, 56 South. 838, and Birmingham Waterworks Co. v. Davis, 16 Ala. App. 333, 77 South. 927, cases cited by appellant. In the case at hand appellant's entire contention, apart from the question of notice, to which we will advert later on, was that appellee had no right to cut off her water supply in order to collect dues from another tenant in the circumstances already stated. There was in truth no controversy, bona fide or other, as to the amount due and unpaid to appellee for water, nor, on the other hand, was there claim that appellee had been delinquent in supplying water. As for the matter in dispute, it appears in evidence that appellee was clearly right, appellant clearly wrong, and she must be held to have known she was wrong, since the difference between them turned upon a question of law.

It follows that, whatever may be the law of other cases, appellee was entitled to the binding instruction which it had on all counts of the complaint as it stood when the evidence was taken. There is no need for further extended consideration of the assignments of error based upon the court's ruling on demurrer against these counts prior to their last amendment. The amendments made no substantial change in the cause of action stated, to which, before as well as

after amendment, appellee had and pleaded a perfect defense, which was afterwards proved without contradiction.

[5] In determining the question raised by the demurrer to count 6 of the complaint we may not consider the contract alleged in other counts, for the contract to which the count refers is not set out either in terms or according to its legal effect, nor does the reference to it suffice to make it a part of the count. But apart from the contract, the count is bad for the reason that the ordinance therein alleged and upon which it proceeds is bad. The ordinance is enacted for the sole benefit of delinquent consumers, and by declaring upon it plaintiff admits that she was a delinquent consumer. It neither grants nor denies the right to cut off water. It merely provides for notice. It must therefore be construed as applicable to cases only in which defendant has a right to cut off water. It is then enacted, not for the general welfare, but solely as an indulgence which is extended to delinquent consumers at the water company's expense. The interest of the public is that the water company shall continue to exercise its function by giving the most efficient service to those consumers who are ready and willing to pay for what they get, without being required to pay for what delinquents may get, and it would tend to impair the service, and so operate to the public detriment, to require the company to furnish water at its expense to consumers already in arrear. At any rate, as we have already indicated, this ordinance confers a special privilege or immunity upon delinquent consumers, is in contravention of common right, and must be pronounced an unreasonable exercise of the power granted to the municipality. The courts do not hesitate to declare such ordinances inoperative, for it was always the doctrine of the courts that every ordinance or by-law must be reasonable and not inconsistent with the general principles of the law of the land, particularly those having relation to the liberty of the citizen and the rights of private property. Board of Commissioners v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575; Ex parte Byrd, 84 Ala. 17, 4 South. 397, 5 Am. St. Rep. 328; 28 Cyc. 368, 369. In this view of count 6, Somerville, J., concurs. The rest of the court do not concur.

There were some questions as to evidence reserved, but any ruling as to them would not suffice to disturb the conclusion stated in respect of appellee's defense, and their further consideration may be pretermitted without offense against any right of appellant.

The point is taken that the assignment of errors as to the demurrer is not supported by the ruling shown by the record, as will appear from the subjoined note which speaks for itself. SAYRE, SOMERVILLE, and THOMAS, JJ., hold that the assignment raises the point argued, and so think an expression as to the sufficiency of count 6 is necessary.

[6] ANDERSON, C. J., and McCLELLAN, GARDNER, THOMAS, and BROWN, JJ., concur in the opinion, except as to the treatment of count 6. They are of the opinion that the ordinance there involved was not void, and that said count, whether good or not, was not subject to any ground of demurrer interposed thereto. All of said Justices, however, except THOMAS, J., think that the case should be affirmed, for the reason that the judgment entry discloses no specific ruling upon demurrers to count 6 under the authority of Alabama Co. v. Niles, 156 Ala. 298, 47 South. 239; Central of Georgia R. R. Co. v. Ashley, 159 Ala. 152, 48 South. 981; Berger v. Dempster, 204 Ala. 305, 85 South. 392; Alabama Co. v. Fergusen, ante, p. 204, 87 South. 796.

Affirmed.

All the Justices concur, except THOMAS, J., who dissents.